# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**DOUG RAY MATHENY,**

     **Plaintiff,**

**vs.**                                                                   **CIVIL ACTION NO. 3:20-CV-00203**

**ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,**

     **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. By Order entered March 23, 2020 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Judgment on the Pleadings, accompanied by "Plaintiff's Appendix" and "Plaintiff's Exhibit A" (ECF Nos. 19, 19-1, 19-2) and Defendant's Brief in Support of Defendant's Decision. (ECF No. 20)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for an award of benefits or for remand (ECF No. 19), **GRANT** Defendant's request to affirm the decision below (ECF No. 20); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from the docket of this Court for the reasons stated *infra*.

1

**Procedural History**

The Plaintiff, Doug Ray Matheny, (hereinafter referred to as "Claimant"), protectively filed his application for supplemental security income on March 8, 2018 alleging disability since March 8, 2018[1], because of diabetes, mental health, depression, anxiety, restless leg syndrome, ringing in both ears, hernia, dislocated collar bone, broken leg at knee, and "no teeth saliva gland stones."[2] (Tr. at 559) His claim was initially denied on June 22, 2018 (Tr. at 404, 444-448) and again upon reconsideration on September 12, 2018 (Tr. at 442, 462-468). Thereafter, Claimant filed a written request for hearing on September 27, 2018. (Tr. at 476-478)

An administrative hearing was held on August 20, 2019 before the Honorable Shawn Bozarth, Administrative Law Judge ("ALJ"). (Tr. at 330-367) On September 24, 2019, the ALJ entered an unfavorable decision. (Tr. at 276-297) On November 25, 2019, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 537, 643-645) The ALJ's decision became the final decision of the Commissioner on February 24, 2020 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-7)

On March 20, 2020, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant (hereinafter referred to as "Commissioner") filed an Answer, a Transcript and Supplemental Transcript of the Administrative Proceedings. (ECF Nos. 15, 16, 18) Subsequently, Claimant filed a Brief in Support of Judgment on the Pleadings along with a supporting appendix and exhibit

---

[1] Claimant initially applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433 alleging an onset date of September 1, 2009 in both applications (Tr. at 279, 538-550). However, he amended the alleged onset date to March 8, 2018 at the administrative hearing, thus precluding eligibility for DIB because Claimant would not have disability insured status on the amended onset date. (Tr. at 279, 337, 412) See 20 C.F.R. §§ 404.130, 404.131, 404.315.

[2] In his Disability Report submitted on March 23, 2018, at the initial level of review, Claimant alleged that he had stopped working as of January 31, 2011 for other reasons, specifically, because "I was laid off." (Tr. at 560)

(ECF Nos. 19, 19-1, 19-2), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 20). Consequently, this matter is fully briefed and ready for resolution.

## Claimant's Background

Claimant was 47 years old as of the date of the unfavorable decision and therefore considered a "younger person" throughout the underlying proceedings. See 20 C.F.R. § 416.963(c). (Tr. at 290, 346) Claimant has a high school education, having obtained a GED in 2016; he completed specialized job training in 1989 concerning "Building and Trade." (Tr. at 291, 339, 560) Claimant last worked as a construction worker, categorized as heavy level of work. (Tr. at 363, 561)

## Standard

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the

fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 416.920a(c), which provides as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently,

appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.

(4) When we rate your degree of limitation in these areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 416.920a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that Claimant had not engaged in substantial gainful activity since March 8, 2018, the amended alleged onset date. (Tr. at 281, Finding No. 1)

At the second inquiry, the ALJ found that Claimant had the following severe impairments: cervical/lumbar degenerative disc disease; diabetes mellitus type II with related neuropathy; left shoulder arthritis/impingement; bilateral carpal/cubital tunnel syndrome; depression; anxiety; and polysubstance abuse in sustained remission. (Tr. at 282, Finding No. 2)

At the third inquiry, the ALJ concluded Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id., Finding No. 3) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform sedentary work

> except the individual could only occasionally balance, crouch, crawl, stoop, bend, or kneel and occasionally climb stairs or ramps. The individual could not climb ladders, ropes, or scaffolds. The individual would require a cane to occasionally ambulate, which would be held in his non dominant left hand leaving his dominant hand free to carry small objects. The claimant is limited to frequent bilateral reaching overhead, in front, and laterally. The individual could frequently handle, finger, and feel. The individual should avoid concentrated exposure to extreme cold and vibration. The individual should not be exposed to unprotected heights, dangerous or moving machinery and machine parts. The individual would be capable of simple, routine, and repetitive tasks in low stress jobs which are jobs that are defined as goal oriented and which do not have an assembly line, piece work, or numerical production quota pace, a job in which the individual is limited to

6

occasional to workplace routine, and a job in which he has only occasional contacts
with supervisors, co-workers, and customers.

(Tr. at 285, Finding No. 4)

At step four, the ALJ found Claimant is unable to perform any past relevant work. (Tr. at 290, Finding No. 5) At the final step, the ALJ determined that in addition to the immateriality of the transferability of job skills, Claimant's age, education, work experience and RFC, there are other jobs that existed in significant numbers in the national economy that Claimant can perform. (Tr. at 290-291, Finding Nos. 6-9) Finally, the ALJ determined Claimant had not been under a disability from March 8, 2018 through the date of the decision. (Tr. at 292, Finding No. 10)

**<u>Claimant's Challenges to the Commissioner's Decision</u>**

In support of his appeal, Claimant asserts that the ALJ's analysis pursuant to Social Security Ruling ("SSR") 96-9p[3] is fatally deficient in light of Claimant's physical and mental impairments. (ECF No. 19 at 5) Claimant contends that his degenerative disc disease, bilateral carpal/cubital tunnel syndrome, and other impairments precludes all work, therefore the ALJ's sedentary RFC assessment is erroneous. (<u>Id</u>. at 6) Claimant's testimony that he is unable to sit for 6-8 hours or perform fine and gross manipulations is supported by the objective medical evidence. (<u>Id</u>.) Additionally, Claimant's testimony reflects that he would be absent or off-task more than acceptable levels. (<u>Id</u>. at 7) The ALJ further erred by disregarding the vocational expert's testimony that sedentary work would be precluded if Claimant was limited to less than frequent use of his hands and that all work would be precluded if he were absent more than one day per month or off-task in excess of 15% or more during the normal workday. (<u>Id</u>.) Lastly, Claimant calls attention to

---

[3] Claimant attached a copy of SSR 96-9p in support of his argument that the ALJ's RFC analysis was erroneous. (ECF No. 19-1)

a letter dated December 5, 2019 wherein Robert Tayengco, M.D., one of Claimant's treating physicians, states that Claimant "is completely and permanently disabled." (Id.; ECF No. 19-2)

In sum, Claimant asserts the final decision is not supported by substantial evidence and asks this Court to award benefits or alternatively, to remand. (Id. at 8)

In response, the Commissioner states Claimant is mistaken that the ALJ did not consider his limitations pursuant to SSR 96-9p, and explained his reasoning for imposing certain work-related limitations concerning his musculoskeletal impairments, as well his manipulative abilities due to his carpal/cubital tunnel impairments, including his subjective complaints in the RFC assessment. (ECF No. 20 at 11-12) With regard to his cervical/lumbar complaints, the Commissioner points out that Claimant was treated conservatively, that diagnostic findings were minimal, that treatment notes in March 2018 indicated he had a sedentary/light activity level, that during a June 2018 disability examination with Jewell Karen, A.P.R.N., findings were relatively unremarkable. (Id. at 12, 13) With regard to his carpal/cubital tunnel complaints, the Commissioner argues that treatment consisted of office visits and injections, that Claimant's treating provider, Vikram Shivkumar, M.D., noted Claimant exhibited "decent" strength and he could easily extend his fingers, although Dr. Shivkumar thought "there is some embellishment on exam." (Id. at 12-13) The Commissioner asserts that even during the disability examination with Ms. Jewell, Claimant had full strength in both hands and could pick up a paperclip with both hands without difficulty, although she noted Claimant "displayed poor effort" during the exam. (Id. at 13) The Commissioner states that there is no objective evidence in the record to support Claimant's allegation that he would be off-task more than 15% or more during the workday. (Id., n.3)

Finally, the Commissioner argues that the conclusory letter from Dr. Tayengco does not

advance his claim, noting that in addition to post-dating the ALJ's decision, Claimant provides no argument as to how this is new and material evidence; that it relates to the relevant period; that there is a reasonable probability that it would have changed the outcome of the decision; or that there was good cause for failing to submit the letter sooner. (Id. at 14) The Commissioner further contends that this letter does not even meet the Regulations definition of a "medical opinion" as there is no explanation for what Claimant can still do despite his impairments. (Id. at 15)

In sum, the Commissioner contends that the final decision is supported by substantial evidence and asks this Court to affirm. (Id. at 16)

**The Relevant Evidence of Record**[4]

The undersigned has considered all evidence of record pertaining to Claimant's arguments and discusses it below.

The Medical Evidence:

Claimant first presented for treatment at Valley Health in February 2018 to establish care after being incarcerated (Tr. at 976). He complained of neck pain and lower/upper back pain (Id.). X-rays of Claimant's cervical spine taken in February 2018 showed mild cervical spondylotic changes at C5-6, with mild encroachment of neural foramina bilaterally at C5-6 secondary to bony hypertrophic changes at joints of Luschka (Tr. at 902). X-rays of his thoracic/dorsal spine performed at the same time had normal findings except for mild degenerative changes of the mid to lower dorsal spine (Tr. at 902-903). X-rays of Claimant's lumbar spine also performed at that time showed minimal degenerative changes at L3-4 and L4-5, with mild facet arthropathy at the L5-S1 facet joints (Tr. at 903).

---

[4] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

Treatment notes related to diabetes education dated March 2018 reflect that Claimant had a sedentary/light activity level, including performing his own activities of daily living/self-care, and walking around for exercise (Tr. at 973).

Karen Jewell, APRN, performed a disability examination of Claimant in June 2018 (Tr. at 1090-1093). Claimant was able to ambulate without the use of assistive devices (Tr. at 1091). He had no difficulty transferring from the chair to the examination table (Id.). His gait was steady (Id.). He was comfortable in both the sitting and supine positions (Id.). He could flex at the hips to replace his socks after the examination (Id.). On physical examination, Claimant's hands revealed no tenderness, redness, or warmth (Tr. at 1092). His ability to squeeze the examiner's fingers was 5/5 on both the right and left hands (Id.). He could write with the dominant hand and pick up a paper clip with either hand without difficulty (Id.). Claimant's muscle strength was graded at 5/5 for both the left and right upper extremities, as well as both the left and right lower extremities (Tr. at 1093). Claimant was able to demonstrate tandem gait, tip toe, and heel walking (Id.). It was noted that Claimant "displayed poor effort" (Id.).

Kara Gettman-Hughes, M.A., performed a mental status examination of Claimant in June 2018 (Tr. at 1095-1099). During the examination, he stated that he was living in a recovery home for drug addiction, and was applying for benefits because "I just had hernia surgery. My colon was out of place due to my hernia. I have diabetes. I have worried a lot the past few years. I have abused drugs" (Tr. at 1095). He stated that he last worked in 2011 for a construction company, but left that position due to physical limitations, as well as being incarcerated (Tr. at 1096). Claimant also reported four prior drug charges, two of which were felonies (Tr. at 1097). Claimant told the examiner that he walks for exercise, performs activities of daily living, performs all areas of

housework, and attends NA and AA meetings (Tr. at 1098).

In October 2018, Claimant presented as a new internal medicine patient with Kimberly Neely, MSN, of Valley Health (Tr. at 1176). Among other things, Claimant complained of left arm pain starting in the back of the neck radiating to the left arm, making his hand go numb (Tr. at 1179). Claimant reported that he previously broke his left collarbone (<u>Id</u>.). He was diagnosed with, among other things, arthralgia of the left shoulder (Tr. at 1181). X-rays of Claimant's left shoulder taken in October 2018 revealed an unremarkable left shoulder examination, and an old fracture-related deformity in the left clavicle and left rib cage (Tr. at 1244).

In November 2018, Brock Niceler, M.D., diagnosed Claimant with clavicle pain, adhesive capsulitis of the left shoulder, and thoracic outlet syndrome (Tr. at 1246-1247). Claimant was advised to continue ice, ibuprofen, and Tylenol for pain (Tr. at 1247). Claimant also requested a steroid injection, which gave him moderate relief (<u>Id</u>.). Claimant did not go to recommended physical therapy for these complaints (Tr. at 1247, 1250).

In December 2018, Dr. Niceler noted some findings consistent with carpal tunnel syndrome (presumably left based on his next appointment), and recommended a wrist splint (Tr. at 1251).

At an appointment with Charles Gilliland, M.D., in January 2019, Claimant complained of left shoulder and hand pain (Tr. at 1252). Claimant was diagnosed primarily with adhesive capsulitis of the left shoulder and left carpal tunnel syndrome (Tr. at 1252-1253).

Claimant saw Sandra Finley, a nurse practitioner, in February 2019 with complaints of paresthesias, and right and left arm weakness (Tr. at 1409). He was diagnosed with left carpal tunnel syndrome and left upper extremity weakness, and received a carpal tunnel injection (Tr. at 1410). EMG/NCV studies of Claimant's left upper extremity performed in February 2019 showed

median mononeuropathy at the left of the wrist on the left (moderate); ulnar mononeuropathy at the level of the elbow on the left (moderate); possible left medial cord plexopathy; and no evidence of radiculopathy, neuropathy, or additional sites of nerve entrapment (Tr. at 1412).

Claimant presented to Dominika Lozowska, M.D., in April 2019 with complaints of right arm weakness and generalized pain (Tr. at 1396). Dr. Lozowska diagnosed left hand contracture, history of paresthesia, paresthesia, and numbness (Tr. at 1398).

Claimant returned to nurse practitioner Finley in April 2019 for follow-up of left upper extremity paresthesias and weakness; she ordered an EMG of the right upper extremity (Tr. at 1391). The EMG/NCV studies of Claimant's right upper extremity performed in May 2019 showed right C7 myotome radiculopathy with active on chronic denervation changes, median mononeuropathy at the level of the wrist on the right (moderate), and ulnar mononeuropathy at the level of the elbow on the right (Tr. at 1360-1361).

In May 2019, Claimant presented to Vikram Shivkumar, M.D., for a Botox injection evaluation to treat right hand contracture (Tr. at 1386). Claimant reported that he could not extend his fingers completely, and more recently noticed pain radiating from the neck to the right elbow (Id.). Claimant also reported that his left hand was numb most of the time, sometimes tingled, and that he dropped items frequently from the left hand due to weakness (Id.). Dr. Shivkumar diagnosed weakness of both hands, neck pain, and contracture of muscle of left hand, and submitted an insurance approval request for Botox injections (Tr. at 1389).

Claimant returned to Dr. Shivkumar later in May 2019 for Botox injections to the right hand due to spasticity; however, he was able to extend his fingers better, and had "decent" strength, with Dr. Shivkumar noting that at times Claimant's fingers were flexed, but could be easily

extended, especially when Claimant was distracted (Tr. at 1364). Dr. Shivkumar diagnosed neck

pain and contracture of muscle of the left hand (Tr. at 1367). Dr. Shivkumar did not inject Botox

at that time, and stated that "I think there is some embellishment on exam" (Tr. at 1368).

Claimant saw Steven Novotny, M.D., an orthopedist, in June 2019 for cervical stenosis of

the spine, carpal tunnel syndrome of the right wrist, and cubital tunnel syndrome on the right (Tr.

at 1283). Dr. Novotny recommended open carpal tunnel release on the right, and cubital tunnel

decompression and possible transposition (Id.).

In July 2019, Nicolas Phan, M.D., examined Claimant for his complaints of cervical

stenosis (Tr. at 1329). Dr. Phan noted that a May 2019 MRI of Claimant's cervical spine showed

multilevel degenerative changes, and right-sided disc bulge with right foraminal narrowing at C6-

7 (Tr. at 1331, 1341-1342). Dr. Phan concurred with Dr. Novotny's recommended surgery (Tr. at

1331).

Two state agency physicians reviewing Claimant's claim for benefits in June 2018 and

August 2018, respectively (including Ms. Jewell's findings), opined that Claimant had the physical

residual functional capacity to perform a limited range of light work (Tr. at 373, 379-381, 417-

419).

Two state agency psychologists reviewing Claimant's claim for benefits in June 2018 and

August 2018, respectively, both opined that Claimant had the mental residual functional capacity

to perform work activity with minimal distractions and superficial contact with others (Tr. at 383,

419-421).

**The Administrative Hearing**

Claimant Testimony:

13

Claimant testified that he lives alone in a rent-free apartment provided by his church. (Tr. at 339) He stated that he started using a cane prescribed by his nurse practitioner about six months ago because he started getting dizzy and he fell a couple of times. (Tr. at 340-341)

He stated he receives drug addiction counseling at Prestera twice a month, which helps with his depression and anxiety. (Tr. at 342-343, 348) Claimant attends NA/AA meetings four times a week that has been very helpful to him. (Tr. at 349) He also goes to church twice a week. (Id.)

He is prescribed medication for depression and anxiety, and diabetes, but endorsed no symptoms from his diabetes or side effects from his medications. (Tr. at 343, 346) Claimant takes ibuprofen for his neck and back pain; he never had physical therapy or injections and does not have a TENS unit. (Tr. at 343) Claimant testified that he has pain in his back and neck all the time, especially when he is moving around; he stated the pain is a level six on average every day. (Tr. at 355)

Claimant testified that he has issues related to carpal and cubital tunnel syndrome; he can button buttons and zip zippers, and tie his shoes, but it takes a long time. (Tr. at 344) He can use a fork and knife, but he has "to place it right." (Id.) He can dress himself and take a shower or bath. (Id.) He can pick up change off a table, although it is hard; he can write with a pencil and pen, but it's very hard because he can hardly hold a pen. (Tr. at 344-345) He can pick up a cup of coffee, but he has to watch so he doesn't drop it. (Tr. at 345) Claimant was scheduled for carpal tunnel surgery but it was called off due to his heart concerns. (Tr. at 349) He stated his carpal tunnel and cubital tunnel syndrome was worse in the right side than the left. (Tr. at 352)

Claimant stated he has trouble sleeping; he testified that he has pain at night in his feet and legs which he described as tingling and numbness. (Tr. at 350-351) Claimant will take naps during day, usually for about an hour and a half. (Tr. at 351-352)

Claimant has no hobbies, and spends his day watching TV or napping; he has family in Ohio and sees them about twice a month. (Tr. at 358-359)

He testified that he could not do a job where he sits all day and take messages because he can't sit that long or write due to pain. (Tr. at 359)

Vocational Expert ("VE") Testimony:

The ALJ asked the VE to assume an individual of Claimant's age, education, and work experience, who was restricted to sedentary work with the following additional limitations: occasional balancing, crouching, crawling, stooping, bending, kneeling, and climbing stairs/ramps; no climbing of ladders/ropes/scaffolds; ability to use cane to occasionally ambulate with the non-dominant left hand, allowing for the dominant hand to be free to carry small objects; frequent bilateral reaching overhead, in front, and laterally; frequent handling, fingering, and feeling; avoidance of concentrated exposure to extreme cold and vibration; no exposure to unprotected heights, dangerous or moving machinery, and machinery parts; simple, routine, and repetitive tasks in low-stress jobs – defined as goal oriented and which do not have an assembly line, piece work, or numerical production quota pace; occasional decision making; occasional changes of workplace setting; occasional changes to workplace routine; and work with only occasional contact with supervisors, coworkers, and customers (Tr. at 363-365). The VE testified that, despite those limitations, such an individual could perform the representative sedentary occupations of sorter, final assembler, and table worker (Tr. at 365).

The VE also opined that if the individual were off task at 15% or more of the workday, excluding breaks and lunch, it would be work preclusive (Tr. at 366). In response to Claimant's counsel as to the availability of sedentary work should the individual were limited to less than frequent ability to manipulate, the VE responded that no work would be available if the individual were limited to less than frequent hand use. (Tr. at 366-367)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

The RFC Assessment Under SSR 96-9p:

As noted *supra*, Claimant complains that the ALJ failed to give proper consideration to SSR 96-9p in light of Claimant's limitations, specifically those caused by his cervical/lumbar degenerative disc disease and carpal/cubital tunnel syndrome, and that either impairment precludes even sedentary work. (ECF No. 19 at 6) Claimant points out that SSR 96-9p specifically provides that sedentary jobs would require an individual to be able to remain in a seated position for approximately 6 hours of an 8-hour workday[5], however, Claimant testified he could not sit that long and that the medical record "corroborates [Claimant's] allegations." (Id.; citing Tr. at 359, 879-907[6], 1090-1100[7], 1329-1428[8]) As an initial matter, the undersigned reviewed the medical record cited by Claimant that he contends "corroborates" his allegation that he is unable to sit 6 hours in an 8-hour workday and has found that ***none*** of these records concerned any sitting limitations determined by any of the providers therein or contained any reports of difficulties with sitting for prolonged periods as alleged by Claimant.

Claimant has also argued that his testimony in addition to the medical record shows he is precluded from working at the sedentary level because SSR 96-9p also provides that "[m]ost sedentary jobs require good use of both hands and the fingers" and that "any significant manipulative limitation of an individual's ability to handle and work with small objects with both

---

[5] See SSR 96-9p, 1996 WL 374185, at *6 ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. If an individual is unable to sit for a total of 6 hours in an 8-hour workday, the unskilled sedentary occupational base will be eroded.")

[6] The undersigned notes that this portion of the transcript did not mention or resemble anything regarding Claimant's allegation that he is unable to sit 6 hours of an 8-hour workday – oddly, the majority of this record concerned Claimant's dental abscess (Tr. at 879-901).

[7] The undersigned notes that this portion of the transcript concerns Ms. Jewell's disability examination and Ms. Gettman-Hughes' mental status examination – neither of which mention Claimant's ability to sit for any period of time; Claimant also does not report to either examiner difficulties with sitting.

[8] The undersigned notes that this portion of the transcript concerns treatment records from Marshall Health, the majority of which pertain to treatment for Claimant's carpal/cubital tunnel syndrome and upper extremities – none of these records contain information related to Claimant's alleged difficulties with sitting for prolonged periods.

hands will result in a significant erosion of the unskilled sedentary occupational base."[9] (ECF No. 6; citing Tr. at 341, 344-345, 349, 352-353, 355, 1222-1284[10], 1329-1428). After review of the medical record Claimant contends supports his argument that he has significant manipulative limitations, the undersigned found ***none*** of these records contained any references, reports or opinions from any provider as to what degree Claimant's fine or gross manipulation is limited or endorsed any manipulative restrictions.

A claimant's RFC represents the *most* that the individual can do despite his limitations or restrictions. See SSR 96-8p, 1996 WL 3744184, at *1 (emphasis in original). The Regulations provide that an ALJ must consider all relevant evidence as well as consider a claimant's ability to meet the physical, mental, sensory and other demands of any job; this assessment is used for the basis for determining the particular types of work a claimant may be able to do despite his impairments. 20 C.F.R. § 416.945(a). The RFC determination is an issue reserved to the Commissioner. Id. § 416.927(d).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physician's opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

---

[9] Id. at *8 ("Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of the fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions. Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base.") (*italics* in original)

[10] The undersigned notes that these medical records primarily concerned treatment for Claimant's issues related to his shoulder/clavicle pain, chest pain, chronic obstructive pulmonary disease (COPD), hernia, prostate, moderate sleep apnea syndrome, as well as lab records; a few records concerned diagnosis and treatment plan for carpal tunnel syndrome (Tr. at 1252-1253, 1283-1284).

Although the ALJ found Claimant's cervical/lumbar degenerative disc disease and bilateral carpal/cubital tunnel syndrome to be severe impairments at step two of the sequential evaluation process, he determined that neither, either singly or in combination, met Listing requirements at step three: the ALJ first noted that Claimant's spinal disorder did not meet Listing 1.04 because the record does not demonstrate compromise of a nerve root or the spinal court, did not demonstrate nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight-leg raising, and did not demonstrate spinal arachnoiditis or pseudoclaudication (Tr. at 283, 903, 1384-1385)[11]; the ALJ then noted Claimant's carpal/cubital tunnel syndrome did not meet Listing 11.14 because the record did not show disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand from a seated position, balance while standing or walking, or use the upper extremities and also because there was no evidence of marked limitation in physical functioning (Tr. at 283, 1358)[12].

Claimant has asserted that his subjective complaints are supported by the objective medical evidence (ECF No. 19 at 6, 7), and the ALJ did find that the objective medical evidence supports the existence of Claimant's severe medical conditions, however, he did not find them to be as debilitating as alleged. (Tr. at 286) The ALJ noted that with respect to Claimant's spine impairments, MRIs of the lumbar spine in February 2019 and of the cervical spine in May 2019 were significant for the presence of impairment (Tr. at 286, 903, 1331, 1341-1342), but during the June 2018 consultative examination, Claimant still exhibited decent range of motion. (Tr. at 286,

---

[11] The undersigned notes that the ALJ cited a radiology report concerning x-rays of Claimant's cervical, thoracic, and lumbar spine dated February 28, 2018 and an MRI of Claimant's cervical spine taken on May 11, 2019.

[12] The ALJ cited one of Dr. Novotny's treatment notes dated June 7, 2019.

1090-1094). The ALJ further noted that at a more recent physical examination on July 17, 2019, Dr. Phan determined there was no urgency in treating Claimant's cervical impairment. (Tr. at 287, 1331)

The ALJ recognized Claimant's treatment history included his reports of pain, tingling, and numbness in his upper extremities, and that in February 2019, EMG/NCV testing confirmed bilateral carpal/cubital tunnel syndrome. (Tr. at 287, 1412) The ALJ acknowledged that the medical record demonstrated Claimant exhibited decreased strength and difficulty with finger extension and abduction and that Claimant was to undergo surgery for his right wrist in July 2019, the ALJ also noted that Claimant testified that his heart concerns prevented follow through. (Tr. at 287, 1284, 1341, 1367, 1329) However, the ALJ recognized that the results of a February 2019 echocardiogram indicated no significant deficits or abnormalities. (Tr. at 287, 14616-1417)[13]

As noted by Claimant, the ALJ specifically stated that the relevant portions of SSR 96-9p was considered in assessing the RFC, and found it accurately described Claimant's capabilities as supported by the record:

> Due to the claimant's musculoskeletal impairments with accompanying pain and range of motion deficits, the claimant is limited to sedentary exertion work with only occasional balancing, stooping, kneeling, and climbing o[f] ramps and stairs and no climbing of ladders, ropes, and scaffolds. The claimant would require a cane to occasionally ambulate, which would be held in his non dominant left hand leaving his dominant hand free to carry small objects. The claimant's cervical deficits, left shoulder impingement, and neurological deficits due to bilateral carpal/cubital tunnel syndrome are considered by limiting the claimant to frequent bilateral

---

[13] The undersigned notes that in medical records submitted to the Appeals Council post-dating the ALJ's decision indicated that Claimant underwent cubital tunnel decompression and carpal tunnel release on his right, in addition to having a subcutaneous tumor removed from his right index finger on October 15, 2019 by Dr. Novotny (Tr. at 44-46). Additional records submitted to the Appeals Council further show that on December 11, 2019, Claimant underwent carpal tunnel release on his left, complex proximal median nerve decompression, pronator release with superficial myotendinous lengthening, and cubital tunnel decompression on his left extremity (Tr. at 35-37) A postop visit treatment note dated December 30, 2019 indicated that Claimant reported doing well and rated his pain at 0/10; he was to continue range of motion exercises and restricted from lifting more than 5 pounds (Tr. at 33)

reaching overhead, in front, and laterally as well as frequent handling, fingering, and feeling.

(Tr. at 289) In addition to his review of the medical and other evidence of record, including Claimant's testimony, *supra*, the ALJ considered the opinions provided by the state agency medical consultants. (Tr. at 290, 368-385, 424-441) Significantly, the ALJ found their opinions only partially persuasive, noting that "[a]lthough consistent with the record at the time of review, evidence received at the hearing level, including the results of an EMG/NCV test confirming bilateral carpal tunnel syndrome (21F), and the usage of a cane for ambulation assistance (21F) indicate greater limitations than opined." (Tr. at 290, 1329-1428)[14]

To the extent Claimant argues that the ALJ's mental RFC is not supported by substantial evidence ("With the aforesaid laundry list of physical and mental impairments in mind, the Administrative Law Judge found that Plaintiff has the residual functional capacity to perform work at the sedentary level of exertion . . .  It is obvious, however, that Plaintiff's impairments preclude employment at any exertional level.") (ECF No. 19 at 5), the undersigned notes that Claimant provides no further development in support of this argument. Nevertheless, with regard to the physical RFC assessment, this Circuit has recognized that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*)). Instead, an ALJ " 'must build an accurate and logical bridge from the evidence to his conclusion.' " Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). In this case, the ALJ provided sufficient notations from the

---

[14] The ALJ was referring to office treatment records from Marshall Health dated November 8, 2018 to July 17, 2019.

record that documented Claimant's subjective complaints related to his physical impairments, and compared these with the overall evidence before him.

In sum, the undersigned **FINDS** the RFC assessment with respect to Claimant's physical impairments is supported by substantial evidence.

Fifth Step Finding:

Claimant has also argued that the ALJ erred when he disregarded the VE's testimony that Claimant could not sustain any substantial gainful activity if he is limited to sedentary work and had less than frequent ability to use his hands, and/or is off-task more than 15% or absent more than one day of work per month, all of which was consistent with Claimant's own testimony (ECF No. 19 at 7). It is noted that this Circuit has long since held that hypothetical questions need only incorporate those limitations that an ALJ accepts as credible and that are supported by the record. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). As stated above, the reconciliation of conflicting evidence was for the ALJ to resolve, not this Court. See SSR 96-8p, 1996 WL 3741784, at *7. Accordingly, the undersigned **FINDS** that the VE's responses to the ALJ's controlling hypothetical question were supported by substantial evidence, and further **FINDS** that the ALJ was entitled to rely upon those responses at the fifth step of the sequential evaluation process. See 20 C.F.R. §§ 416.960(c)(2), 416.966(e).

Although Claimant advocates for an alternate decision, such are matters that involve resolving the conflicting evidence of record, which is an evidentiary finding within the purview of the ALJ. In short, though Claimant may disagree with the ALJ's determination that he can work at the sedentary level for an eight-hour workday, this Court cannot re-weigh this conflicting

evidence or substitute its judgment for the Commissioner's. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also, SSR 96-8p, 1996 WL 3741784, at *7.

In short, the ALJ's narrative of the record included the objective medical evidence, including imaging, and examination findings, as well as the other evidence of record, including Claimant's own statements and testimony; the ALJ's thorough discussion of all this evidence, and his ultimate determination that Claimant remained capable of sedentary work despite his ongoing complaints, provided sufficient explanation allowing for meaningful judicial review. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). This Court is not "left to guess about how the ALJ arrived at his conclusions" therefore remand is not necessary. Mascio, 780 F.3d at 637. Accordingly, the undersigned **FINDS** the ALJ's fifth step finding is based upon substantial evidence.

Implication of 42 U.S.C. § 405(g):

Claimant summarily referred to a post-decision letter dated December 5, 2019 from Dr. Tayengco, a treating provider, which stated simply: "Patient is completely and permanently disabled." (ECF No. 19-2) As an initial matter, the Regulations define medical opinions as follows:

> Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

See 20 C.F.R. § 416.927(a)(1). It is clear that this letter fails to conform with the definition of a "medical opinion" in accordance with SSA Regulations. Further, it is well known that medical opinions on issues reserved to the Commissioner, especially those concerning statements as to whether a claimant is disabled "does not mean that we will determine that you are disabled." Id. §416.927(d)(1). Thus, in addition to the fact that an adjudicator is not bound to "give any special significance to the source of an opinion on issues reserved to the Commissioner" per Section

416.927(d)(3), Dr. Tayengco's conclusory statement regarding Claimant's disability is "inherently neither valuable nor persuasive to the issue of whether [Claimant] is disabled" per Section 416.920b(c).

Moreover, as pointed out by the Commissioner, not only has Claimant failed to demonstrate that (1) Dr. Tayengco's letter is new and material evidence; and (2) there is good cause for the failure to submit the evidence during the prior proceeding as envisioned by 42 U.S.C. § 405(g), but Claimant also fails to explain how there is a reasonable probability that the new evidence would have changed the outcome of the final decision. (ECF No. 20 at 14); See Wilkins v. Secretary, Dept. of Health and Human Services, 953 F.2d 93, 96 n.3 (4th Cir. 1991)(citing Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985)). Indeed, the Regulations require that the new evidence relates to the period on or before the date of the ALJ's decision, and this letter does not indicate in any fashion that it does. See 20 C.F.R. § 416.1470. In short, the undersigned **FINDS** that to the extent Claimant argues that Dr. Tayengco's letter somehow demonstrates that the ALJ's decision was not based on substantial evidence lacks merit.

Finally, the undersigned **FINDS** that the Commissioner's final decision determining that Claimant is not disabled is supported by substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for remand (ECF No. 19), **GRANT** the Defendant's request to affirm the decision below (ECF No. 20), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: December 7, 2020.



Omar J. Aboulhosn
United States Magistrate Judge